# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 15-1100V
Filed: December 5, 2017
Not for Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MARIA CRESPO, | \* |
| on behalf of N.S., a minor child, | \* |
| | \* |
| Petitioner, | \* |
| | \* |
| v. | \* |
| | \* |
| SECRETARY OF HEALTH | \* |
| AND HUMAN SERVICES, | \* |
| | \* |
| Respondent. | \* |
| | \* |

Attorneys' fees and costs decision; reasonable attorneys' fees and costs

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Amber D. Wilson, Washington, DC, for petitioner.
Debra F. Begley, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On October 1, 2015, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) alleging that her daughter, N.S., suffered from transverse myelitis ("TM") as a result of her March 1, 2013 receipt of DTaP and pneumococcal conjugate ("PC") vaccines.   Pet. at ¶¶ 3, 5.   Petitioner further alleges that N.S. suffered the residual effects of this injury for more than six months.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy.   When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure.   If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

On January 5, 2017, the undersigned issued a decision awarding damages to petitioner based on the parties' stipulation filed on January 3, 2017.   On February 3, 2017, petitioner filed a motion to amend the decision to remove petitioner as the guardian of N.S.'s estate and to include a footnote directing the payment be paid to the party appointed by a court of competent jurisdiction to serve as guardian of the estate.[2]   On February 8, 2017, the undersigned held a status conference to make sure that respondent was satisfied with the undersigned's withdrawing the damages decision and filing a new one with the footnote.   On February 9, 2017, the undersigned issued a new decision with the only change adding the footnote.

On September 8, 2017, petitioner filed a motion for attorneys' fees and costs ("motion"). In her motion, petitioner requests a total of $77,158.47, comprised of (1) $40,387.48 for attorneys' fees and costs incurred by Maglio Christopher & Toale, PA; (2) $10,343.49 for attorneys' fees and costs incurred by Ms. Rose Romero for the establishment of a guardianship for N.S.'s vaccine injury award; (3) $24,430.00 for future attorneys' fees and costs to maintain the guardianship; and (4) $1,997.50 for attorneys' fees and costs incurred by Ms. Debra J. Slater whom the Florida court appointed as guardian ad litem.   In accordance with General Order #9, petitioner's counsel noted in the fee application that petitioner has not advanced any funds in the prosecution of her claim.

On October 13, 2017, respondent filed a response to petitioner's motion objecting to any attorneys' fees and costs related to a proceeding to establish the guardianship in a Florida state court.   Resp. at 4.   Respondent also objects to paying any future attorneys' fees and costs to maintain N.S.'s guardianship.   Id. at 6.   On November 16, 2017, petitioner filed a reply to respondent's response.   On November 17, 2017, petitioner filed a motion for supplemental attorneys' fees ("supplemental fees motion"), requesting additional fees in the amount of $10,263.80 for working on petitioner's reply to respondent's response.

## DISCUSSION

### I.   Legal Standard for Attorneys' Fees and Costs

#### A.   In General

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs."

---

[2]  The footnote added in the February 8, 2017 Decision says: "Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian/conservator of N.S.'s estate under the laws of the State of Florida. No payments pursuant to this Stipulation shall be made until petitioner provides the Secretary with documentation establishing her appointment as guardian/conservator of N .S.'s estate. If petitioner is not authorized by a court of competent jurisdiction to serve as guardian/conservator of the estate of N.S. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian/conservator of the estate of N. S. upon submission of written documentation of such appointment to the Secretary."

2

42 U.S.C. § 300aa-15(e)(1).   The special master has "wide discretion in determining the reasonableness" of attorneys' fees and costs.   Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994); see also Saxton ex rel. Saxton v. Sec'y of HHS, 3 F.3d 1517, 1519 (Fed. Cir. 1993) ("Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications.").

## II.   Reasonableness of Requested Attorneys' Fees and Costs

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."   Avera, 515 F.3d 1343, 1348.   This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney."   Rodriguez v. Sec'y of HHS, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing Avera, 515 F. 3d at 1349).   For cases in which forum rates apply, McCulloch provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience.   See McCulloch v.Sec'y of HHS, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation."   Avera, 515 F.3d at 1348.   Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."   Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).   Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task.   See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008).   It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."   Id.   Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond.   See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).   A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees.   Broekelschen v. Sec'y of HHS, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### A.  Maglio Christopher & Toale

In her motion and supplemental fees motion, petitioner requests a total of $50,651.28, comprised of $48,795.40 for attorneys' fees and $1,855.88 for attorneys' costs, incurred by Maglio Christopher & Toale, PA.[3]

### 1.  Reduction in Hourly Rates

---

[3] In her motion filed on October 13, 2017, petitioner requests attorneys' fees with Maglio Christopher & Toale in the litigation of this matter in the amount of $38,531.60 and attorneys' costs in the amount of $1,855.88.   In her supplemental fees motion filed on November 17, 2017, petitioner seeks additional attorneys' fees in the amount of $10,263.80.

### a.  Ms. Wilson's Appropriate Hourly Rates

The undersigned find that the hourly rates requested for petitioner's counsel, Ms. Amber Wilson, are excessive.   Petitioner requests the following hourly rates: $295.00 for Ms. Wilson's work performed in 2015, $301.00 for her work performed in 2016, and $308.00 for her work performed in 2017.   Ex. 24, at 1-20; Docket #41, at 2-3.[4]   According to Ms. Wilson's declaration, she was admitted to practice in Florida on September 27, 2012 and was admitted in Washington, D.C. on July 11, 2014.   Ms. Wilson Aff. at 1.   Prior to law school, she earned a master's degree in Genetics and a doctorate degree in Molecular and Cellular Pharmacology. Id.   In 2011-12, Ms. Wilson worked as a law clerk in a litigation practice.   Id. at 2.   In 2013-14, Ms. Wilson worked for approximately one year as a law clerk in the Office of Special Masters for the United States Court of Federal Claims ("OSM").   Id.   Ms. Wilson has practiced before the Vaccine Program within the United States Court of Federal Claims since June 30, 2014.   Id.

McCulloch suggests an hourly rate of $150.00 to $225.00 for attorneys with less than four years of experience and an hourly rate of $225.00 to $300.00 for attorneys with four to seven years of experience in the Vaccine Program.   McCulloch, No. 09-293V, 2015 WL 5634323, at *19.   Solomon explains that time spent as a law clerk, even at OSM, does not count toward years of experience determining the individual's appropriate McCulloch range. Solomon v. Sec'y of HHS, No. 14-748V (Fed. Cl. Spec. Mstr. Oct. 27, 2016).   Because Ms. Wilson is located in the forum, Washington, D.C., she is entitled to forum rates.   However, Ms. Wilson did not reach the four-year level until 2016.   Although Ms. Wilson has an advanced degree and additional expertise due to her time as a law clerk at OSM, these factors influence the rate to be awarded within the appropriate range.   They do not warrant a move to a higher range. Id.

Therefore, in consideration of Ms. Wilson's skill, experience, and quality of work, the undersigned finds that the appropriate hourly rate for Ms. Wilson's work performed in 2015 is $225.00, in 2016 is $275.00, and in 2017 is $290.00.   As Ms. Wilson billed 29.40 hours for work on the case in 2015 at a rate of $295.00, 40.70 hours in 2016 at a rate of $301.00, and 48.90 hours in 2017 at a rate of $308.00, **the undersigned reduces petitioner's attorneys' fees for Ms. Wilson's work by $3,996.40**.

### b.  Discounted Rate for Hours Spent Traveling

Petitioner seeks Ms. Wilson's full hourly rate for her travel time expended to meet petitioner.   Ex. 18, at 7 (entries dated 10/8/2015, 10/12/2015, 10/13/2015).   The undersigned finds that she should be awarded one-half of her normal rate for these hours.

In the Vaccine Program, special masters traditionally have compensated time spent traveling when no other work was being performed at one-half an attorney's hourly rate.   *See* Hocraffer v. Sec'y of HHS, No. 99-533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July

---

[4] Petitioner filed her supplemental fees motion without an exhibit number.

25, 2011); <u>Rodriguez v. Sec'y of HHS</u>, No. 06-559V, 2009 WL 2568468, at *21 (Fed. Cl. Spec. Mstr. Jul. 27, 2009); <u>English v. Sec'y of HHS</u>, No. 01-61V, 2006 WL 3419805, at *12-13 (Fed. Cl. Spec. Mstr. Nov. 9, 2006).   However, special masters should not use this rule as standard practice but rather "[e]ach case should be assessed on its own merits."   <u>Gruber v. Sec'y of HHS</u>, 91 Fed. Cl. 773, 791 (2010).   "Even an automatic 50% award may be too high for an undocumented claim, given the possibility that an attorney may use the travel time to work on another matter or not to work at all while traveling."   <u>Id.</u>   Ms. Wilson did not provide evidence that she was working 100% of the time during travel.

Since all travel occurred in 2015, petitioner will be awarded fees at a rate of $112.50, representing one-half of Ms. Wilson's appropriate hourly rate in 2015, $225.   Petitioner billed for 6.5 hours of travel in total.   Thus, petitioner's award is **further reduced by $731.25.**

### c.  Law Clerk's Appropriate Hourly Rate

In her supplemental fees motion, petitioner seeks a $150 hourly rate for law clerk's work. The undersigned concludes that the hourly rate for a law clerk should be reduced from $150 to $145, which results in a **further deduction of $93.50.**

## 2.  Reduction of Billable Hours

### a.  Clerical Tasks

It is firmly rooted that billing for clerical and other secretarial work is not permitted in the Vaccine Program.   <u>Rochester v. United States</u>, 18 Cl.Ct. 379, 387 (1989) (denied an award of fees for time billed by a secretary and found that "[these] services … should be considered as normal overhead office costs included within the attorneys' fees rates"); <u>Mostovoy v. Sec'y of HHS</u>, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

Petitioner's counsel's billing records contain multiple entries that are best characterized as administrative time.   For instance, Ms. Wilson billed 0.2 hours for organizing and coordinating scanning to file and reimbursement of travel receipts.   Ex. 18, at 8 (entry dated 10/27/2015).   Additionally, throughout the billing invoices, Ms. Wilson billed 0.1 hours for "read court order; update case management" after reviewing a one-page court order or scheduling a conference.   Ex. 18 (entries dated 10/14/2015; 11/17/2015; 1/13/2016; 2/25/2016; 4/7/2016; 6/6/2016; 7/21/2016; 9/14/2016; 2/6/2017).   Beyond the fact that this is clerical work billed at an attorney's rate, the undersigned cannot imagine how it takes 0.1 hours or six minutes to enter a date, or even three dates, on one's calendar.   These types of entries are clerical in nature and are not billable time.   Accordingly such entries will be deducted from the fee award, amount to a **reduction of $284.00.**

### b.  Time Spent Reviewing the Case File

The undersigned considers the generalized entries in which Ms. Wilson billed for "Review case for direction; update file accordingly," <u>see</u> e.g., Ex 18, at 13, to be unreasonable. It is difficult to comprehend why counsel billed for a general review of the case file when she was actively involved in the case.   Accordingly, the undersigned deducts for the following entries: 0.2 hours (9/22/2015); 0.1 hours (11/4/2015); 0.2 hours (12/4/2015); 0.2 hours (6/10/2016); 0.2 hours (12/9/2016); and 0.2 hours (6/16/2017).   The total amount of the **reduction equals $280.50.**

### c.   Research Tasks and Block Billing

Respondent does not object to the hours expended by Ms. Wilson pursuing the case. After a review of petitioner's fee application, the undersigned considers most of the hours included on the billing entry to be reasonable.   However, numerous entries claimed by Ms. Wilson for research on Florida Guardianship Law and future guardianship expenses in petitioner's motion, as well as legal research claimed in petitioner's supplemental fees motion, are uncompensable.

Petitioner's counsel may not bill for educating herself in the law.   She would not be able to bill her client for keeping herself professionally current, and she is similarly not entitled under the Vaccine Program to compensation for educating herself.   Hensley v Eckerhart, 461 U.S. 424, 434 (1983) ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.) (citation omitted).   Ms. Wilson has over 5 years of experience and this is not her first case in the Vaccine Program.

Additionally, the billing records contain numerous entries which constitute block billing, where Ms. Wilson has billed for multiple tasks, including legal research, in a single entry.   This type of "block billing" is not appropriate in vaccine cases.   Barry v. Sec'y of HHS, No. 12-39V, 2016 WL 6835542, at *4 (Fed. Cl. Spec. Mstr. Oct. 25, 2016).   An application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine whether the amount requested is reasonable.   Rodriguez v. Sec'y of HHS, No. 06-559V, 2009 WL 2568468, at *8 (Fed. Cl. Spec. Mstr. Oct. 25, 2016). Because it is counsel's burden to document the fees claimed, the undersigned will not compensate the time billed for the entire billing entry.   Id.

In many instances, Ms. Wilson billed large amounts of time without sufficient detail as to how long each task was performed and made it impossible for the undersigned to determine the amount of time each task took.   For example, on January 5, 2016, Ms. Wilson billed 4 hours on reviewing file and drafting initial demand letter, reviewing documents from client, beginning damages calculations, researching incontinence and future treatment, researching orthotics, calling client to discuss, and leaving voicemail.   Ex. 18, at 11.   On February 11, 2016, Ms. Wilson billed another 4 hours for reviewing and editing demand letter, determining and beginning calculation of costs for counseling, researching psychosocial impact of urinary incontinence and other disabilities, and continue drafting estimations and calculations of future medical needs.   Id.   On July 11, 2017, Ms. Wilson indicates that she spent 2.2 hours

6

reviewing and drafting petitioner's motion, researching for legal authority for future guardianship costs, preparing affidavit for guardianship attorney, and preparing exhibits for guardianship and invoices.   Id. at 19.   On July 27, 2017, Ms. Wilson billed 3.5 hours for drafting petitioner's motion, reading case law, researching Florida law, updating questions for guardianship attorney regarding speculation of future fees and clarification of Florida rules.   Id. at 20.   On petitioner's supplemental fees motion, Ms. Wilson billed 5 hours for editing the draft of petitioner's reply brief, reading relevant court decisions cited by respondent, researching the plain language rule and other statutory interpretation laws, researching the vaccine statute, and outlining notes regarding updates and future arguments to add into the reply brief.   Docket #41, at 3 (entry dated 11/15/2017).

Due to uncompensable research tasks and block billing, the undersigned further reduces the attorneys' fees incurred by Maglio Christopher & Toale, PA by 10 percent.   See Willett v. Sec'y of HHS, No. 15-252V, 2017 WL 3298983, at *4 (Fed. Cl. Spec. Mstr. June 2, 2017) (reducing fee award by 20 percent); Raymo v. Sec'y of HHS, No. 11-654V, 2016 WL 7212323, at *18 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reducing fee award by 20 percent); see also Wasson v. Sec'y of HHS, 24 Cl. Ct. 482, 484 (Fed. Cl. 1991) (a line-by-line evaluation is not required in determining a reasonable number of hours expended), aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993).   This adjustment results in a **further deduction of $4,340.98.**

Thus, the total amount of attorneys' fees for Maglio Christopher & Toale, PA is reduced by $9,726.63 and $39,068.77 is awarded.   The undersigned finds the attorneys' costs reasonable.   Therefore, the total amount paid for attorneys' fees and costs incurred by Maglio Christopher & Toale, PA is **$40,924.65.**

## B.  Ms. Rose Romero

### 1.  Establishment of a Guardianship of N.S.

Petitioner seeks a total of $10,343.49 charged by Ms. Romero for the establishment of a guardianship for N.S.'s vaccine injury award.   Respondent objects to paying for the establishment of a guardianship in a state court because it is a separate ancillary state action that is not a proceeding for compensation for a vaccine-related injury or death under Section 300aa-11.   Resp. at 4.   Petitioner argues that special masters routinely award costs for state court proceedings to establish guardianship of a minor's property when those proceedings are required for receipt of a vaccine injury award.   Reply at 5.

The issue involved here is whether the costs of such guardianship proceedings are properly compensable.   As respondent notes, some opinions have answered that question in the negative.   Mol v. Sec'y of HHS, 50 Fed. Cl. 588, 590 (1990); Siegfried v. Sec'y of HHS, 19 Cl. Ct. 323, 325 (1990).   However, in more recent cases, special masters have interpreted the Vaccine Act's fee provision to include reimbursement for costs incurred to obtain a guardianship in a state court when establishment of a guardianship is a condition of settlement and incorporated as part of a

damages decision.   See Kukreja v. Sec'y of HHS, No. 14-104V, 2017 WL 5383097, at *5 (Fed. Cl. Spec. Mstr. Sept. 5, 2017); Melnikova v. Sec'y of HHS, No. 09-322V, 2012 WL 1339606, at *4 (Fed. Cl. Spec. Mstr. Mar. 27, 2012); Lindsey ex rel. Lindsey v. Sec'y of HHS, 08–258V, 2011 WL 6046605, at *2 (Fed. Cl. Spec. Mstr. Nov. 15, 2011) (awarding costs for guardianship when it is a condition for receiving the stipulated award and explaining that special masters have used a "but for" test to analyze reimbursement of costs); Gruber ex rel. Gruber v. Sec'y of HHS, No. 00–749V, 2009 WL 2135739 (Fed. Cl. Spec. Mstr. June 24, 2009), vacated on other grounds, 91 Fed. Cl. 773 (2010); Ceballos ex rel. Ceballos v. Sec'y of HHS, No. 99–97V, 2004 WL 784910, at *18–23 (Fed. Cl. Spec. Mstr. Mar. 25, 2004) (finding guardianship costs reimbursable generally but not in that case because a guardianship was not required by or mentioned in the court's decision).

The undersigned agrees with the recent decisions issued by special masters and finds attorneys' fees and costs of establishing the guardianship are compensable under the Vaccine Act when they are incurred as a condition of receipt of the damages award.   The Vaccine Act requires a petition be filed by a minor's legal representative.   42 U.S.C. § 300aa-11(b)(1)(A). The Act defined "legal representative" as "a parent or an individual who qualifies as a legal guardian under State law."   42 U.S.C. § 300aa-33(2).   The parties' stipulation filed on January 3, 2017 requires the establishment of a guardianship in a state court to receive payment pursuant to the stipulation.   Stip. ¶ 16.   After the undersigned issued her decision awarding damages on January 5, 2017, petitioner filed an unopposed motion to amend the decision to include paragraph 16 of the joint stipulation in order to assist petitioner's guardianship attorney in completing the guardianship process.   The motion was granted.   In her amended decision awarding damages issued on February 9, 2017, the undersigned included paragraph 16 as footnote 2 and awarded damages according to the stipulation's terms, including the provision requiring the establishment of a guardianship.   Thus, the fees and costs incurred to establish the guardianship in a state court are within "proceedings on the petition" and reimbursable under § 300aa-15(e)(1).

The amount of attorneys' fees and costs incurred in connection with a guardianship/conservatorship proceeding must be reasonable.   42 U.S.C. § 300aa-15(e)(1)(A)-(B); Perreira, 27 Fed. Cl. at 34.   Petitioner requests a total of $10,343.49 for Ms. Romero's work to establish a guardianship.   Ms. Romero expended 34.48 hours and charged a rate of $300.00 per hour.   After a review of Ms. Romero's invoice, the undersigned considers both the hours included on the billing entry and the hourly rate reasonable given Ms. Romero's more than twenty years of experience.   Thus, the $10,343.49 attorneys' fees and costs incurred by petitioner to establish N.S.'s guardianship are compensable.

## 2.  Future Attorneys' Fees to Maintain the Guardianship

The undersigned finds the $24,430.00 in future attorneys' fees and costs billed by Ms. Romero to maintain N.S.'s guardianship uncompensable.   Respondent objects to these fees and states that Section 15(e) of the Vaccine Act allows compensation only for reasonable attorneys' fees and other costs "incurred," but does not provide for fees and costs that "will be incurred."

Resp. at 6.   Respondent cites the U.S. Court of Federal Claims in <u>Black v. Sec'y of HHS</u>, 33 Fed. Cl. 546, 550 (Fed.Cl. 1995): "One incurs an expense…at the moment one becomes legally liable, not at the moment when one pays off the debt, nor at the moment when one decides that an expense will become necessary one day in the future."   Resp. at 7.   In her reply to respondent's response, petitioner argues that the fees and costs to maintain a guardianship should be compensable because they would not have been incurred "but for" petitioner's vaccine injury claim.   Reply at 6, 9.   Petitioner further argues that these fees are not speculative.   <u>Id.</u> at 13-15.

The Vaccine Act limits the amount of "compensation to cover petitioner's … costs" to those "incurred in any proceeding on [a Vaccine Act] petition."   42 U.S.C. § 300aa-15(e)(1). The costs of a "service" performed by another court, provider or other professional were incurred 'on a petition' and 'in prosecuting the petition' if the service was ordered by this court and accomplished as part of the process of providing reasonable compensation to petitioner. <u>Ceballos</u>, 2004 WL 784910, at *22.   Although establishing the guardianship in order for the award to be made is compensable, costs incurred "without court or respondent involvement" are generally "not incurred 'on a peition' and thus are not compensable under the Program." <u>Ceballos</u>, 2004 WL 784910, at *20; <u>Mol</u>, 50 Fed. Cl. At 591 (rejecting a compensation theory under which all 'but for' expense would have to be compensable including a wide variety of probate matters); <u>Haber v. Sec'y of HHS</u>, No. 09-458V, 2011 WL 83911, at *2 (Fed. Cl. Spec. Mstr. Feb. 14, 2011) (noting that "compensation is unavailable for myriad legal implications unrelated to the vaccine petition"); <u>Bennett v. Sec'y of HHS</u>, No. 15-65V, 2017 WL 3816094, at *3 (Fed. Cl. Spec. Mstr. Aug. 7, 2017).   Here, the undersigned's decision awarding damages only recognized the establishment of N.S.'s guardianship, not the maintenance of it, as an essential prerequisite for N.S.'s guardian to receive the award.   Petitioner's "but for" assertion overlooks the criterion distinguishing costs incurred for obtaining authorization as a legal representative, which is required under the Act, to establish a guardianship, which is required at respondent's behest in a stipulation, from those costs incurred for maintaining the guardianship, which is not.

Even if the Act permitted a prepayment of attorneys' fees and costs, the amount is speculative.   The vaccinee in this case is now six years old, having been born on November 29, 2011.   Pet. at ¶ 2.   N.S. will reach her majority in 2029.   Ms. Romero mistakenly billed petitioner in advance for fourteen (from 2018 through 2032) instead of eleven (from 2018 through 2029) years of work.   Ex. 22 at 3.   Even if a correct number of years is billed, it is speculative for Ms. Romero to bill petitioner in advance for eleven years of work and estimate 4.5 hours to prepare and file each annual accounting form.   Not only has this $24,430.00 cost not been incurred, it may never be incurred.   Therefore, the undersigned finds petitioner's future attorneys' fees and costs to maintain the guardianship under Florida law not compensable under the Vaccine Act.

### C.  Ms. Debra Slater

#### 1.  Appointment as Guardian ad Litem

Ms. Debra Slater served as guardian ad litem in the Florida state court proceeding to facilitate the appointment of a guardianship process, and billed petitioner a total of $1,997.50. The undersigned finds fees and costs associated with the appointment of a guardian ad litem under Florida law not compensable.   Although the Florida Guardianship Law requires the appointment of a guardian ad litem to protect a minor's interests, it was unrelated to the vaccine petition and establishing the biological father as a legal representative of N.S.   None of the services rendered by Ms. Slater had anything to do with the proceedings in the Vaccine Program. Because the fees associated with these services were incurred "without court or respondent involvement," they were not incurred as part of a "proceeding on [a Vaccine Act] petition" as the statute requires.   Ceballos, 2004 WL 784910, at *20-22 (quoting § 300aa-15(e)(1)).

## CONCLUSION

Based on her experience and review of the billing records submitted by petitioner, the undersigned finds the majority of petitioner's attorneys' fees and costs request reasonable. **Accordingly, the court awards:**

a. **$40,924.65**, representing attorneys' fees and costs incurred by Maglio Christopher & Toale, PA.   The award shall be in the form of a check made payable jointly to petitioner and Maglio Christopher & Toale, PA in the amount of **$40,924.65**; and

b. **$10,343.49**, representing attorneys' fees and costs incurred by Ms. Rose Romero for the establishment of N.S.'s guardianship.   The award shall be in the form of a check made payable jointly to petitioner and Maglio Christopher & Toale, PA in the amount of **$10,343.49**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[5]

**IT IS SO ORDERED.**

Dated: <u>December 5, 2017</u>                                    <u>/s/ Laura D. Millman</u>
                                                                               Laura D. Millman
                                                                               Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.